

I N   T H E

# Court of Appeals of Indiana

**P.J.,**

*Appellant*

v.

**Review Board of the Indiana Department of Workforce Development,**

*Appellee*



September 27, 2024

Court of Appeals Case No.
24A-EX-659

Appeal from the Review Board of the Indiana Department of
Workforce Development

The Honorable Gabriel B. Paul, Chairman
The Honorable Lawrence A. Dailey, Member
The Honorable Heather D. Cummings, Member

Trial Court Cause No.
24-R-199

**Opinion by Judge Bradford**
Judge Crone concurs and Judge Tavitas concurs in part and concurs
in result in part with opinion.

**Bradford, Judge.**

## Case Summary

[1] After applying for unemployment benefits, P.J. was found ineligible because his employment had been terminated for just cause. P.J. did not file a timely appeal of the eligibility determination, and his subsequent appeal was dismissed by the Department of Workforce Development Review Board ("the Review Board") for lack of jurisdiction. P.J. contends that the determination of eligibility ("the DOE") was inadequate to inform him that his application for unemployment benefits had been denied and that his appeal was timely. P.J. also contends that he should have been permitted to proceed *in forma pauperis* on appeal. We affirm.

## Facts and Procedural History

[2] At some time during June or July of 2023, P.J. applied for unemployment benefits. On July 27, 2023, the Department of Workforce Development ("DWD") sent P.J. the DOE informing him that he had been found to have been "[d]ischarged for just cause." Ex. Vol. p. 4. Specifically, the DOE explained as follows:

> **Circumstances of Case**
>
> The claimant was discharged due to a work-related breach of duty. The information provided supports the allegation.
>
> **Conclusion of Case**
>
> The claimant was discharged for just cause. IC-22-4-15-1(d) states a discharge for breach of duty reasonably owed an employer by an employee is disqualifying. It has been established that the claimant's actions meet this definition. The employer is relieved of charge per IC-22-4-11-1(d)2. Benefits are reduced and suspended as shown below.
>
> **THIS DETERMINATION MAY RESULT IN AN OVERPAYMENT OF BENEFITS.**
>
> **Legal Result of Case**
> **CLAIMANT:** YOUR BENEFIT RIGHTS ARE SUSPENDED EFFECTIVE WEEK ENDING 07/08/2023…
>
> RIGHT OF APPEAL: THIS DETERMINATION WILL BECOME FINAL ON 08/07/2023 IF NOT APPEALED. EITHER PARTY MAY APPEAL THIS DETERMINATION AND REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE WITHIN TEN DAYS OF THE DATE THIS DETERMINATION WAS SENT. PLEASE SEE REVERSE SIDE FOR APPEAL PROCEDURE.

Ex. Vol. p. 4 (emphases and capitalization in original). With regard to P.J.'s

right to appeal, the reverse side of the DOE provided as follows:

> **CLAIMANT:** If the legal result of your case states that your weekly benefits have been reduced or suspended, or if your maximum benefit amount has been reduced, you have the right to appeal this decision.…

> **CLAIMANT:** If you have been disqualified you should continue to file vouchers on-line. You must continue to track your work searches and maintain all necessary documents should you win your case on your appeal.

Ex. Vol. p. 5 (emphases in original). P.J. did not appeal the DOE before the August 7, 2023 deadline.

[3] On October 9, 2023, P.J. appealed the DOE. On October 31, 2023, Administrative Law Judge ("ALJ") Ashley Musick dismissed P.J.'s appeal for lack of jurisdiction, finding that P.J. had "failed to file a timely appeal to an [ALJ]." Ex. Vol. p. 12. After P.J. appealed ALJ Musick's decision, the Review Board remanded the matter for a hearing on the timeliness of P.J.'s initial appeal. The Review Board ordered the ALJ "to issue a decision in accordance with the evidence presented at the hearing," and stated that if P.J. "proves that he filed a timely appeal of the DOE or had good cause for failing to file a timely appeal, the [ALJ] must conduct a hearing on the merits of [P.J.'s] claim for benefits." Ex. Vol. p. 14. However, the Review Board ordered that if the ALJ determined that P.J. had failed to prove that his appeal was timely or that he "had good cause for failing to file a timely appeal, the [ALJ] shall reissue the Notice of Dismissal." Ex. Vol. p. 14.

[4] On remand, ALJ Bryan Cogswell conducted a hearing on the timeliness of P.J.'s appeal of the DOE. On January 16, 2024, ALJ Cogswell dismissed P.J.'s appeal of the DOE, concluding that P.J. had failed to file a timely appeal. ALJ Cogswell found that the DOE had been sent to P.J. on July 27, 2023, and that

P.J. had indicated that he had received the DOE sometime in late July. Using the date of July 31, 2023, ALJ Cogswell determined that, at the latest, P.J. had been required to have filed any appeal of the DOE on or before August 10, 2023. While P.J. claimed during the evidentiary hearing that he had been confused by the language included in the DOE, ALJ Cogswell concluded that P.J. did not have good cause for filing a late appeal as he had been provided with "the correct information" in the DOE. Appellee's App. Vol. II p. 7.

On January 22, 2024, P.J. appealed ALJ Cogswell's decision. The Review Board affirmed ALJ Cogswell's decision on February 16, 2024.

## Discussion and Decision

### I.    Review Board's Dismissal of P.J.'s Appeal

The Indiana Unemployment Compensation Act (UCA) provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. When the decision of the Review Board is challenged, an appellate court makes a two-part inquiry into (1) the sufficiency of the facts found to sustain the decision and (2) the sufficiency of the evidence to sustain the findings of fact.…

The Review Board's findings of basic facts are subject to a substantial evidence standard of review. We neither reweigh evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the Review Board's findings. We will reverse the decision only if there is no substantial evidence to support the Review Board's findings.

*J.M. v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283, 1286 (Ind. 2012) (internal citations and quotations omitted). P.J. challenges the dismissal of his appeal of the DOE, claiming that he had been denied due process by the allegedly inadequate DOE. He alternatively claims that due to the alleged inadequacies, his appeal should have been considered to be timely.

## A. Due Process

Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation omitted). In *Mathews*, the United States Supreme Court identified three factors a court should balance in considering whether a claimant has received due process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." *Id.* at 335.

It is undisputed that P.J. has a property interest in receiving unemployment benefits. As for the second factor, the relevant statutory provisions protect against an erroneous deprivation of a claimant's interest by providing the statutory right to appeal the initial eligibility determination to an ALJ and the right to subsequent review by the Review Board. *See* Ind. Code § 22-4-17-3. Further, with respect to the third factor, we agree with the Review Board that

the government's interest in preserving available funds to ensure that benefits are available for prompt payment for qualified individuals "outweighs the private interest in receiving a detailed explanation of the reasons benefits were denied." Appellee's Br. p. 16. Given that both P.J. and the Review Board have interests involved, we find that the procedural safeguards in place weigh in favor of due process. As such, review of the *Matthews* factors alone, therefore, does not establish a due-process violation. We therefore turn our attention to P.J.'s contention that he was denied due process by alleged inadequacies in the DOE.

[9] P.J. contends that he was denied due process because the DOE "fail[ed] to tell [him] that DWD denied his application for benefits," Appellant's Br. p. 12, claiming that "[w]ithout clear communication that a denial had been made, the [DOE] does not pass the due process requirements for adequate notice." Appellant's Br. p. 13. Alternatively, P.J. claims that he was denied due process because the DOE was insufficient to provide him with notice of the reasons for the eligibility determination. Indiana Code section 22-4-17-2(e) provides that

> In cases where the claimant's benefit eligibility or disqualification is disputed, the department shall promptly notify the claimant and the employer or employers directly involved or connected with the issue raised as to the validity of the claim, the eligibility of the claimant for waiting period credit or benefits, or the imposition of a disqualification period or penalty, or the denial of the claim, and of the cause for which the claimant left the claimant's work, of the determination and the reasons for the determination.

The Indiana Supreme Court has held, however, that detailed notice "is not required in all instances." *Perdue v. Gargano*, 964 N.E.2d 825, 833 (Ind. 2012). Moreover, the United States Court of Appeals for the Seventh Circuit has indicated that notice must merely convey "all of the salient information and enable[ a claimant] to protect [his] interests." *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009).

[10] As is outlined above, the DOE clearly stated that P.J.'s employment was determined to have been terminated for just cause and, as a result, P.J. was disqualified from receiving benefits. The DOE also clearly stated that P.J.'s benefit rights, *i.e.*, unemployment payments, would be suspended effective the week ending July 8, 2023, and that the DOE would become final if not appealed by August 7, 2023. The DOE informed P.J. that if he chose to appeal the decision, he could request a hearing before an ALJ and set forth the relevant appeal procedures.

[11] An individual is not eligible to receive unemployment benefits if he was discharged from his employment for just cause. *J.M.*, 975 N.E.2d at 1286. Contrary to P.J.'s assertion that the DOE was misleading, vague, and contradictory, we conclude that it clearly informed P.J. that his benefit rights had been suspended, *i.e.*, ended, because his employment had been terminated for just cause, which disqualified him from receiving benefits pursuant to Indiana Code section 22-4-15-1(d). The DOE also clearly informed P.J. that the DOE would become final if he failed to appeal the decision within ten days. While P.J. claims to have been confused by the DOE, his alleged confusion

does not, without more, render the notice provided inadequate. Furthermore, as the Review Board points out, the use of the word "suspended"—as opposed to "denied"—in the DOE is appropriate because the relevant statutory provisions provide that a claimant may, under certain circumstances, requalify for benefits during the benefit period, which is valid for a calendar year. *See* Ind. Code §§ 22-4-15-1, 22-4-2-21. P.J. received adequate notice of the reasons for the eligibility determination and, as a result, was not denied due process.

## B. Timeliness

[12] Relying on his assertion that the DOE was inadequate, P.J. argues that he had good cause for not filing his appeal by the ten-day deadline. Having concluded, however, that the DOE was adequate, we reach the same conclusion as both ALJ Cogswell and the Review Board, *i.e.*, that P.J. failed to file a timely appeal of the DOE. The DOE clearly stated that any appeal must be filed within ten days. As ALJ Cogswell found, P.J.'s appeal of the DOE was required to have been filed on or before August 10, 2023. P.J.'s appeal was untimely as it was not filed until October 9, 2023, nearly two months after the ten-day deadline had passed. The DOE clearly stated the deadline for filing an appeal and we are unconvinced that P.J. had good cause for failing to file a timely appeal.

## II. Denial of Request to Proceed *In Forma Pauperis* on Appeal

[13] P.J. requested permission to proceed *in forma pauperis* in the instant appeal. The motions panel denied his request on March 22, 2024. While a "writing panel has the inherent authority to reconsider any decision of the motions panel while

an appeal remains pending," we are "reluctant to overrule orders issued by the motions panel unless we have determined that there is clear authority establishing that the motions panel erred." *State v. Tyree*, 237 N.E.3d 685, 690 (Ind. Ct. App. 2024) (internal quotations omitted). Further, a litigant "seeking to proceed on appeal *in forma pauperis* need only convince the court of their indigency." *Campbell v. Criterion Grp.*, 605 N.E.2d 150, 158 (Ind. 1992). "[E]ach litigant wishing to proceed on appeal *in forma pauperis* must make" a showing of indigency. *Id.* at 159.

[14] P.J. asserts that pursuant to Indiana Code section 33-37-3-2(b), the fact that he is represented by Indiana Legal Services ("ILS") is proof of indigency, which he claims entitles him to proceed *in forma pauperis* on appeal. However, Indiana Code section 33-37-3-2 applies to requests to proceed in forma pauperis from the trial court level. Indiana Appellate Rule 40(A) governs requests to proceed in forma pauperis on appeal from a trial court and Appellate Rule 40(B) governs requests to proceed in forma pauperis on appeal from an administrative decision. Thus, because P.J. is appealing from the Review Board, *i.e.*, an administrative agency, Appellate Rule 40(B) controls.

[15] With regard to an appeal from an administrative agency, Appellate Rule 40(B) provides that

> Any party to a proceeding before an Administrative Agency who desires to proceed *in forma pauperis* on appeal shall file with the Court on Appeal a motion for leave to so proceed, together with an affidavit conforming to Forms #App.R. 40-1 and #App.R. 40-2, showing in detail the party's inability to pay fees or costs or to

give security therefor, the party's belief that the party is entitled to redress, and a statement of the issues the party intends to present on appeal.

(Emphasis in original).

[16] In requesting that we overturn the decision of the motions panel, P.J. cites to the "Affirmation of Indigency" that the motions panel considered when denying his request.[1] The motions panel was unconvinced that P.J.'s "Affirmation of Indigency" proved that he was indigent for the purposes of paying the appellate court filing fee. P.J. cites to no clear authority establishing the motions panel erred and we find none. As such, given our previously-stated reluctance to overturn our motions panel, we will not disturb its determination in this regard.

[17] The judgment of the Review Board is affirmed.

Crone, J., concurs.

Tavitas, J., concurs in part and concurs in result in part with opinion.

ATTORNEYS FOR APPELLANT
Jennifer W. Terry
Megan Stuart
Indiana Legal Services

---

[1] The Review Board does not argue that P.J.'s "Affirmation of Indigency" did not conform to either of the forms mentioned in Appellate Rule 40(B).

Indianapolis, Indiana

Samantha M. Paul
Indiana Legal Services
Bloomington, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

**Tavitas, Judge, concurring in part and concurring in result in part.**

[18] I concur with the majority's conclusion that P.J. received adequate notice of the reasons for the Review Board's eligibility determination and that P.J.'s administrative appeal of the DOE was untimely. I write separately to explain that P.J.'s motion to proceed *in forma pauperis* on appeal should have been granted and that he should not have been required to pay the $250 filing fee. Because he has already paid this filing fee, the question is moot, and I therefore concur in result on this issue.

[19] In his motion to proceed *in forma pauperis*, P.J. cited the civil indigency statute, Indiana Code Section 33-37-3-2. I acknowledge that our Supreme Court held that the predecessor statute to current civil indigency statute—former Indiana Code Section 33-19-3-2—"ha[d] no application to the litigant preparing to prosecute or defend an appeal." *Campbell v. Criterion Grp.*, 605 N.E.2d 150, 158 (Ind. 1992).[2] Prior to 2009, Indiana Code 33-37-3-2, like its predecessor statute, simply provided:

> A person entitled to bring a civil action or to petition for the appointment of a guardian under IC 29-3-5 may do so without paying the required fees or other court costs if the person files a statement in court, under oath and in writing:

---

[2] The Court nevertheless held that the appellant was entitled to proceed *in forma pauperis*. *Id*. at 159-60.

(1) declaring that the person is unable to make the payments or to give security for the payments because of the person's indigency;

(2) declaring that the person believes that the person is entitled to the redress sought in the action; and

(3) setting forth briefly the nature of the action.

Ind. Code § 33-37-3-2 (2004).

[20] In 2009, however, this statute was amended to make the former language of the statute subsection (a) and to add subsection (b), which provides:

> If a person brings a civil action or petition for the appointment of a guardian under IC 29-3-5, a clerk **shall** waive the payment of required fees or other court costs by the person without court approval if:
>
> **(1) the person is represented by an attorney:**
>
> > **(A) who is employed by Indiana Legal Services or another civil legal aid program; []**
> >
> > * * * * *
>
> (2) the attorney files a statement with the clerk that:
>
> > **(A) seeks relief from paying the required fees or other court costs;**
> >
> > (B) declares that the person believes that the person is entitled to the redress sought in the action;
> >
> > (C) sets forth briefly the nature of the action;
> >
> > **(D) is accompanied by an approved affidavit of indigency; and**

(E) is signed by the attorney.

Ind. Code § 33-37-3-2(b) (2009) (emphases added).[3] The statute has not been amended since.

[21] The current version of the indigency statute thus constitutes a substantial change in the language of the statute, and the statute contains no language explicitly limiting its application to trial courts. We are also "constrained to give a liberal construction to our statutes in favor of the pauper." *Atkins v. Crawford Cnty. Clerk's Office*, 171 N.E.3d 131, 135 (Ind. Ct. App. 2021) (citation and internal quotations omitted). Thus, *Campbell* does not foreclose application of the current indigency statute to cases on appeal.

[22] The majority claims that the indigency statute clearly conflicts with Indiana Appellate Rule 40(B). I disagree. Appellate Rule 40(B) provides:

> Any party to a proceeding before an Administrative Agency who desires to proceed in *forma pauperis* on appeal shall file with the Court on Appeal a motion for leave to so proceed, together with an affidavit conforming to Forms #App.R. 40-1 and #App.R. 40-2, showing in detail the party's inability to pay fees or costs or to give security therefor, the party's belief that the party is entitled to redress, and a statement of the issues the party intends to present on appeal.

---

[3] The 2009 amendment also added subsection (c), which provides that "[t]his section does not prohibit a court from reviewing and modifying a finding of indigency by the court or a clerk if a person who received relief from the payment of required fees or other court costs ceases to qualify for the relief."

Thus, Appellate Rule 40(B) merely sets forth the procedure by which a party on appeal from a decision of an administrative agency may seek to proceed *in forma pauperis*. A procedure with which P.J. complied.[4] And P.J.'s affidavit of indigency clearly shows in detail P.J.'s inability to pay fees or costs by noting that he is represented by Indiana Legal Services, which under the indigency statute, automatically qualifies him to proceed *in forma pauperis*. Nothing in Appellate Rule 40(B) clearly conflicts with the indigency statute.

[23] In short, P.J. is represented by attorneys from Indiana Legal Services, he sought relief from the payment of the required filing fee, and his motion met the other requirements of the indigency statute. I, therefore, believe that the motions panel of this court should have granted P.J.'s motion to proceed *in forma pauperis*. However, because P.J. has already paid the $250 filing fee, this issue is moot.[5]

---

[4] As noted by the majority, the Review Board does not claim that this affidavit fails to conform to the forms mentioned in Appellate Rule 40.

[5] P.J. makes no argument that the filing fee can or should be refunded.